## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

                                       Case No.  10-33074

GIBSON AND EPPS, L.L.C.
dba GIBSON & EPPS, L.L.C.

           Debtor

## MEMORANDUM ON MOTION
## FOR RELIEF FROM JUDGMENT

**APPEARANCES:**    HAGOOD, TARPY & COX, PLLC
                         T. Lynn Tarpy, Esq.
                         Suite 2100, Riverview Tower
                         900 South Gay Street
                         Knoxville, Tennessee  37902-1537
                         Attorneys for Debtor

                        TAYLOR, REAMS, TILSON & HARRISON
                         H. Scott Reams, Esq.
                         Post Office Box 1799
                         Morristown, Tennessee  37816-1799
                         Attorneys for Gary Epps, individually as a member of
                           Gibson and Epps, L.L.C. and on behalf of Gibson and
                           Epps, L.L.C., and Matthew W. Sexton, Receiver for
                           Gibson and Epps, L.L.C.

                        THE HURLEY LAW FIRM, P.C.
                         D. Scott Hurley, Esq.
                         Ryan N. Shamblin, Esq.
                         800 South Gay Street
                         Suite 1501
                         Knoxville, Tennessee  37901-0682
                         Attorneys for Jimmy Gibson

STITES & HARBISON, PLLC
Erika R. Barnes, Esq.
Allison A. Wiemer, Esq.
401 Commerce Street
Suite 800
Nashville, Tennessee  37219

Ian T. Ramsey, Esq.
400 W. Market Street
Suite 1800
Louisville, Kentucky  40202
Attorneys for BSCMS 1999-CLFI Clinton Highway REO, LLC

SAMUEL K. CROCKER, ESQ.
UNITED STATES TRUSTEE
Patricia C. Foster, Esq.
Howard H. Baker, Jr. United States Courthouse
800 Market Street
Suite 114
Knoxville, Tennessee  37902
Attorneys for United States Trustee

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

2

Before the court is the Motion for Relief from Judgment filed on October 3, 2011, by Gary

Epps, individually as a member of Gibson and Epps, L.L.C.[1] and on behalf of Gibson and Epps,

L.L.C., and Matthew W. Sexton, Receiver for Gibson and Epps, L.L.C. (collectively, Movants),

asking the court, pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure, applying

Rule 60 of the Federal Rules of Civil Procedure in bankruptcy cases, to set aside the Agreed Order

Dismissing Case (Agreed Dismissal Order) entered on November 4, 2010, to the extent that the

Agreed Dismissal Order directs the Debtor to execute a deed in lieu of foreclosure to BSCMS

1999-CLFI Clinton Highway REO, LLC (BSCMS).

The evidentiary hearing on the Motion for Relief from Judgment was held on January 30 and

31, 2012.  The record before the court consists of Joint Stipulation of Facts and Documents (Joint

Stipulations) filed by the parties on January 25, 2012, thirty-nine stipulated exhibits introduced into

evidence, and the testimony of seven witnesses, Matthew Wayne Sexton, T. Lynn Tarpy, Gary

Ronald Epps, Jackie Lynn Epps, Jimmy Gibson, Kelley Hinsley, and Jesse Overbay.

This is a core proceeding.  28 U.S.C. § 157(b)(2)(A) and (O) (2006).

# I

The parties have stipulated to and/or the record establishes the following facts.  The Debtor

is a limited liability corporation organized under the laws of the State of Tennessee pursuant to the

Articles of Organization of Gibson and Epps, L.L.C. executed on October 3, 1997, by Jimmy Gibson

---

[1] Gibson and Epps, L.L.C. is also referred to as Gibson & Epps, L.L.C. in the numerous exhibits admitted into evidence.  For consistency, the references in this Memorandum will be to Gibson and Epps, L.L.C. or to the Debtor.

and Gary Epps, filed with the Tennessee Secretary of State on October 7, 1997, and recorded with

the Register of Deeds for Hamblen County, Tennessee, on October 17, 1997. TRIAL EX. 6; TRIAL

EX. 41. In association with the formation of the Debtor, Mr. Gibson and Mr. Epps also executed a

document entitled "Operating Agreement of Limited Liability Company (Member Managed)"

(Operating Agreement), setting forth the operating procedures by which the Debtor was to be

governed. TRIAL EX. 7. As reflected in the Articles of Organization, Mr. Gibson was designated

managing member. TRIAL EX. 6 at ¶ 6. Both Mr. Epps and Mr. Gibson were "granted the authority

to execute instruments for the transfer of real property[,]" and "[t]he unanimous consent of the

members [was] required to: file or consent to the filing of a bankruptcy or insolvency petition or

otherwise institute insolvency proceedings, and amend the limited liability company's organizational

documents." TRIAL EX. 6 at ¶¶ 10, 14. Additionally, within the specific terms of the Operating

Agreement, the Chief Manager was authorized, among other things, "to make contracts on behalf

of the Company in the ordinary course of the Company's business, . . . [and to] sign and deliver in

the name of the Company any deeds, mortgages, bonds, contracts or other instruments pertaining to

the business of the Company . . .[.]" TRIAL EX. 7 at ¶ 10.3(a).

On October 10, 1997, the Debtor, through Mr. Gibson as its "duly authorized managing

member," executed a Promissory Note in the amount of $660,800.00 payable to Bedford Capital

Funding Corp. and a Mortgage, Security Agreement and Fixture Filing. TRIAL EX. 8; TRIAL EX. 12.

By way of a Warranty Deed dated October 16, 1997, and recorded with the Knox County Register

of Deeds on October 17, 1997, Gibson and Associates and Gary Epps, A Partnership[2], conveyed

---

[2] Prior to organizing the Debtor, Mr. Epps and Gibson & Associates entered into a Partnership Agreement dated
(continued...)

4

commercial real property located at 5727 Clinton Highway, Knoxville, Tennessee (5727 Clinton Highway Property) to the Debtor. TRIAL EX. 5.  The Debtor then executed the following documents to secure the Promissory Note:  (1) a Deed of Trust executed and recorded on October 22, 1997, pledging the 5727 Clinton Highway Property, subject to a lease from the Debtor by the United States Postal Service (U.S. Postal Service) pursuant to a U.S. Postal Service Facilities Department Lease (U.S. Postal Service Lease) dated January 22, 1996, and amended May 31, 2001; (2) a Rider to Deed of Trust also dated October 22, 1997, pledging fixtures, equipment, and other assets of the Debtor; and (3) an Assignment of Leases and Rents, both recorded with the Knox County Register of Deeds on October 22, 1997. TRIAL EX. 3; TRIAL EX. 9; TRIAL EX. 10; TRIAL EX. 11.  The Promissory Note, Deed of Trust, Rider to Deed of Trust, and Assignment of Leases and Rents, which were executed by Jimmy Gibson in his capacity as the Debtor's managing member and which are enforceable by BSCMS, are valid and binding on the Debtor, and the indebtedness was secured by the collateral set forth therein, including the 5727 Clinton Highway Property and the Debtor's interest in and rights to rents from the property. JT. STIPS. at ¶¶ 2-4.  The Debtor's sole business was operation of the 5727 Clinton Highway Property, its only asset, pursuant to the U.S. Postal Service Lease.  JT. STIPS. at ¶¶ 6-7.

By letter dated May 26, 2009, Midland Loan Services notified the Debtor that, although the servicer for the loan changed from KeyBank to Midland Loan Services in September 2008, payments were being received by KeyBank and forwarded to Midland Loan Services, and it requested that the

---

[2](...continued)
June 1, 1995, which created Gibson and Associates and Gary Epps, A Partnership. TRIAL EX. 1.  Gibson & Associates and Gary Epps, A Partnership, and Gibson and Associates and Gary Epps, A Partnership, are the same entity.

Debtor update its remittance information to avoid any late charges or future problems. JT. STIPS. at ¶¶ 8, 10; TRIAL EX. 52. Thereafter, the Debtor defaulted under the terms of the Promissory Note by not making payments when due. By letter dated November 11, 2009, Midland Loan Services notified the Debtor that it was in default under the Loan Documents, which was followed by a letter dated January 27, 2010, in which Midland Loan Services notified the Debtor that the loan had been accelerated and that the entire principal balance and other sums were immediately due and payable. JT. STIPS. at ¶¶ 9, 11, 12; TRIAL EX. 53; TRIAL EX. 54. Midland Loan Services then made demand upon the U.S. Postal Service by letter dated January 28, 2010, to remit all rents to it and, pursuant to that direction, the U.S. Postal Service began remitting rent payments directly to Midland Loan Services. JT. STIPS. at ¶ 14. The 5727 Clinton Highway Property was appraised in March 2010, having an "as-is market value" of $780,000.00 and a 90-day liquidation value of $500,000.00, subject to the limitations, conditions, and assumptions contained within the valuation report. JT. STIPS. at ¶ 13; TRIAL EX. 56.

After being advised that a foreclosure sale of the 5727 Clinton Highway Property had been scheduled for May 26, 2010, the Debtor, through Jimmy Gibson, without benefit of counsel, filed a Voluntary Petition under Chapter 11 commencing case number 10-32594 on May 25, 2010. JT. STIPS. at ¶¶ 15-16; COLL. TRIAL EX. 36. The bankruptcy case was subsequently dismissed on June 3, 2010, following which a second foreclosure sale was scheduled for June 30, 2010. JT. STIPS. at ¶¶ 17-18. Prior to the second scheduled sale, Mr. Gibson consulted with Attorney T. Lynn Tarpy about the Debtor's options, and on June 29, 2010, filed the Voluntary Petition commencing this Chapter 11 bankruptcy case on behalf of the Debtor. JT. STIPS. at ¶¶ 1, 19; COLL. TRIAL EX. 27.

BSCMS filed a Motion to Dismiss on July 14, 2010, which was later resolved between the Debtor and BSCMS, culminating in entry of the Agreed Dismissal Order on November 4, 2010. JT. STIPS. at ¶¶ 20-21; TRIAL EX. 19. In addition to dismissing the Chapter 11 case, the Agreed Dismissal Order directed the Debtor to execute and place into escrow a quit claim deed to the 5727 Clinton Highway Property and gave the Debtor until December 31, 2010, to sell the 5727 Clinton Highway Property, after which the Debtor would deliver the quit claim deed to BSCMS in lieu of foreclosure. JT. STIPS. at ¶¶ 22-23; TRIAL EX. 19. The Debtor entered into a contract for the sale of the 5727 Clinton Highway Property with Florida Postal Investments on October 6, 2010; however, the sale did not close. JT. STIPS. at ¶ 24; TRIAL EX. 38. On November 18, 2010, Mr. Gibson, as Managing Member of the Debtor, executed the QuitClaim Deed in lieu of foreclosure in favor of BSCMS, COLL. TRIAL EX. 44; however, it was not delivered, and on December 30, 2010, he once again executed the QuitClaim Deed as well as a Settlement Agreement with BSCMS. JT. STIPS. at ¶¶ 25-26; COLL. TRIAL EX. 17; COLL. TRIAL EX. 19; COLL. TRIAL EX. 47. BSCMS recorded the QuitClaim Deed with the Knox County Register of Deeds on January 12, 2011. JT. STIPS. at ¶ 27; COLL. TRIAL EX. 17; COLL. TRIAL EX. 19.

On or about January 14, 2011, Mr. Epps's attorney contacted the attorney for BSCMS to discuss possible resolutions, including conveyance of the 5727 Clinton Highway Property to Mr. Epps or a third party. JT. STIPS. at ¶ 28. Thereafter, on February 16, 2011, Mr. Epps, acting individually and on behalf of the Debtor, filed a Complaint styled *Gary Epps and Gibson & Epps, LLC v. Gibson & Associates, Jimmy Gibson, Tammy C. Gibson, JT JB, LLC, and BSCMS 1999-CLF1 Clinton Highway REO, LLC*, No. 11CV026 in the Circuit Court for Hamblen County,

7

Tennessee (State Court Lawsuit), seeking an accounting and damages for fraud and breach of fiduciary duty, contending that Mr. Gibson retained money that should have been used as lease payments to BSCMS, and asking the court to declare the QuitClaim Deed void and that it be set aside or, in the alternative, seeking imposition of a constructive trust or equitable lien as to the 5727 Clinton Highway Property to secure the equity and interests of the Debtor. JT. STIPS. at ¶ 29; COLL. TRIAL EX. 17. Matthew W. Sexton was appointed by the Hamblen County Circuit Court as Receiver for Gibson and Epps, L.L.C., and between February and August 2011, the parties to the State Court Lawsuit engaged in mediation and settlement discussions. JT. STIPS. at ¶¶ 30, 33; TRIAL EX. 32. The parties did not, however, reach an agreement, and BSCMS filed a motion to dismiss the State Court Lawsuit on August 5, 2011, averring that the Hamblen County Circuit Court lacked jurisdiction to vacate the Agreed Dismissal Order. JT. STIPS. at ¶ 31.

On October 3, 2011, the Movants filed the Motion for Relief from Judgment, asking this court to set aside the Agreed Dismissal Order to the extent it authorized and directed execution of the QuitClaim Deed, averring that Mr. Epps did not authorize the filing of the bankruptcy case or entry of the Agreed Dismissal Order, that Mr. Gibson knowingly gave false addresses for Mr. Epps, resulting in his not receiving notice of the bankruptcy filing, that a transfer of the 5727 Clinton Highway Property results in a windfall to BSCMS, and that Mr. Gibson's conduct constituted fraud upon the court. JT. STIPS. at ¶ 32. On October 24, 2011, the Debtor's attorney, Mr. Tarpy, filed a Response stating that Mr. Gibson had not been in recent communication with him but that he had spoken to the state court receiver, Mr. Sexton, who has joined in the Motion for Relief from

8

Judgment, and that it appears to be in the best interest of the Debtor's principals if the Motion for

Relief from Judgment is granted.

Mr. Gibson also filed a Response to Motion for Relief from Judgment on October 24, 2011,

acknowledging that the addresses provided for Mr. Epps in the bankruptcy filing were incorrect but

were the result of an unintentional mistake.  He also admitted that he did not obtain authorization

from Mr. Epps to file the Debtor's bankruptcy case or enter into the Agreed Dismissal Order.

BSCMS also filed its Response to the Motion for Relief from Judgment on October 24, 2011.[3]

As stated in the scheduling Order entered on November 3, 2011, the issue before the court

is "whether Gary Epps, individually, and on behalf of Gibson and Epps, L.L.C. is entitled to an order

pursuant to Rule 60(b)(1), (2), (3), (4), and/or Rule 60(d)(3) of the Federal Rules of Civil Procedure,

made applicable herein by Rule 9024 of the Federal Rules of Bankruptcy Procedure, setting aside

the portion of the Agreed Order Dismissing Case entered on November 4, 2010, authorizing the

Debtor to execute a deed in lieu of foreclosure to BSCMS transferring the real property located at

5727 Clinton Highway, Knoxville, Tennessee."[4]  OR. at 2.

## II

The Motion for Relief from Judgment is grounded first upon Rule 60(b) of the Federal Rules

of Civil Procedure which provides as follows:

---

[3] BSCMS was allowed to intervene pursuant to the scheduling Order entered on November 3, 2011.

[4] Although the November 3, 2011 Order does not reference subsection (6) of Rule 60(b), it was addressed by
the parties in their post-trial briefs and will, accordingly, be considered and discussed herein as if raised at trial.

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

FED. R. CIV. P. 60(b) (applicable to bankruptcy cases pursuant to FED. R. BANKR. P. 9024).  A party seeking relief under Rule 60(b) bears the burden of establishing that all prerequisites have been satisfied, *McCurry ex rel. v. Adventist Health Sys./Sunbelt, Inc.*, 298 F.3d 586, 592 (6th Cir. 2002), and "bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008).  Additionally, all Rule 60(b) motions must be filed "within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."  FED. R. CIV. P. 60(c)(1). A party may not, however, "use a Rule 60(b) motion as a substitute for an appeal, or as a technique to avoid the consequences of decisions deliberately made yet later revealed to be unwise[,]" *Hopper v. Euclid Manor Nursing Home*, 867 F.2d 291, 294 (6th Cir. 1989) (citations omitted), and "[w]hat constitutes a reasonable time depends on the facts of each case."  *Days Inns Worldwide,*

*Inc. v. Patel*, 445 F.3d 899, 906 (6th Cir. 2006). The Movants seek relief under subsections (1), (2), (3), (4), and (6).[5]

## A

Rule 60(b)(1) is "intended to provide relief to a party in only two instances: (1) when the party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000) (quoting *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999)). Three factors are relevant to determine whether Rule 60(b)(1) relief is appropriate: "'(1) whether the party seeking relief is culpable; (2) whether the party opposing relief will be prejudiced; and (3) whether the party seeking relief has a meritorious claim or defense.'" *Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2003) (quoting *United Coin Meter v. Seaboard Coastline R.R.*, 705 F.2d 839, 844-45 (6th Cir. 1983)). Only when a party can demonstrate that it lacks culpability due to mistake, inadvertence, surprise, or excusable neglect does the court look to the other two factors, *United States v. Reyes*, 307 F.3d 451, 456 (6th Cir. 2002), and "[a] party's conduct is culpable if it 'display[s] either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings.'" *Williams*, 346 F.3d at 613 (quoting *Amernational Indus. v. Action-Tungsram, Inc.*, 925 F.2d 970, 978 (6th Cir. 1991)).

---

[5] In its post-trial brief, BSCMS states in a footnote that it questions whether Mr. Epps has proper standing to bring a Rule 60(b) motion since it relieves parties from final judgments; however, there is no question that Mr. Sexton, who has joined in with Mr. Epps in the Motion for Relief from Judgment, is a legal representative of the Debtor, having been appointed as Receiver by the Hamblen County Circuit Court, and he possesses proper standing.

"[A] determination of 'excusable neglect' does not turn solely on whether the *client* has done all that he reasonably could do . . .; the performance of the client's *attorney* must also be taken into account." *Allen v. Murph*, 194 F.3d 722, 724 (6th Cir. 1999) (emphasis in original). However, "Rule 60 was not intended to relieve counsel of the consequences of decisions deliberately made, although subsequent events reveal that such decisions were unwise." *FHC Equities, LLC v. MBL Life Assur. Corp.*, 188 F.3d 678, 687 (6th Cir. 1999) (quoting *In re Salem Mortg. Co.*, 791 F.2d 456, 459 (6th Cir. 1986)). In general, "'clients must be held accountable for the acts and omissions of their attorneys,' who are, after all, those clients' 'freely selected agent[s].'" *United States v. Munoz*, 605 F.3d 359, 368 (6th Cir. 2010) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs., Ltd. P'ship*, 507 U.S. 380, 396-97, 113 S. Ct. 1489, 1499, 123 L.3d.2d 74 (1993)). The inquiry into whether to apply excusable neglect is essentially "an equitable one, taking account of all relevant circumstances surrounding the party's omission [including] . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith[,]" *Pioneer*, 113 S. Ct. at 1498, although the court also "has considerable discretion" in making its determination. *Eskridge v. Cook County*, 577 F.3d 806, 810 (7th Cir. 2009). Thus, "the proper focus is upon whether the neglect of [the Defendant] *and [his] counsel* was excusable[,]" *Pioneer*, 113 S. Ct. at 1499 (emphasis in original), and "an attorney's inaction or strategic error based upon a misreading of the applicable law [or rules] cannot be deemed 'excusable' neglect, even though it might well be excusable for the client to rely on the advice of counsel." *McCurry*, 298 F.3d at 595.

As to subsection (b)(1), the Movants argue that the following "mistakes" and acts of "excusable neglect" justify setting aside the Agreed Dismissal Order as it relates to the QuitClaim Deed: (1) Mr. Gibson did not have the authority to file the bankruptcy case on the Debtor's behalf; (2) Mr. Gibson did not possess the authority to have Mr. Tarpy execute the Agreed Dismissal Order; and (3) BSCMS was not entitled to and Mr. Gibson did not have the authority to execute the QuitClaim Deed as a resolution to its motion to dismiss. As previously discussed, there are three relevant factors for the court to examine: whether Mr. Epps is culpable, whether BSCMS or Mr. Gibson will be prejudiced by setting aside the Agreed Dismissal Order, and whether Mr. Epps has a meritorious claim.

It is not disputed and the record clearly establishes that Mr. Gibson did not obtain authorization from Mr. Epps to file the bankruptcy case on June 29, 2010, on behalf of Gibson and Epps, L.L.C. as required by the Articles of Organization, that the addresses listed for Mr. Epps in the bankruptcy statements and schedules were incorrect, and that Mr. Epps did not know about the bankruptcy filing until late December 2010, after the Agreed Dismissal Order had been entered and the Debtor had executed the Settlement Agreement with BSCMS. It is also undisputed that Mr. Gibson did not disclose to or discuss with Mr. Epps the default to BSCMS, the subsequently scheduled foreclosures, the settlement with BSCMS, or the requirement to execute the QuitClaim Deed in lieu of foreclosure prior to December 2010. Specifically, Mr. Epps testified that after rumors began circulating that a number of post offices were to be closed, he was approached by a potential buyer in the summer of 2010, and he and Mr. Gibson agreed that they ought to think about selling the 5727 Clinton Highway Property. At that time, however, Mr. Epps was unaware, and was

13

not told by Mr. Gibson, that BSCMS had not received all of its loan payments and had initiated foreclosure proceedings.  Mr. Epps also testified that had he known, rather than file for bankruptcy, he could have tried to cure the approximately $40,000.00 default or could have enlisted the assistance of others to bid at the foreclosure sale.[6]  These facts reflect a lack of culpability by Mr. Epps with respect to the default, the bankruptcy filing, the settlement with BSCMS, or the subsequent dismissal and deed in lieu of foreclosure.  Nevertheless, although the first factor has been met, the Movants have failed to prove that the opposing parties will not be prejudiced or that they have a meritorious claim justifying the court setting aside the Agreed Dismissal Order.

The court agrees with the Movants' contentions that Mr. Gibson will not be prejudiced by setting aside the Agreed Dismissal Order; in fact, the opposite appears true, and if the 5727 Clinton Highway Property is worth more than the $500,000.00 consideration, Mr. Gibson would also benefit from setting aside the Agreed Dismissal Order and invalidating the QuitClaim Deed.  The same cannot be said, however, for BSCMS.  In support of this factor, Mr. Sexton, the court-appointed receiver in the State Court Lawsuit, testified that the 5727 Clinton Highway Property was the Debtor's only asset, and through the Lease Agreement with the U.S. Postal Service, BSCMS receives an annual rent of $69,500.00, which translates to $5,791.67 monthly.  *See* TRIAL EX. 3 at ¶ 2.  Mr. Sexton also testified that he was contacted by a prospective buyer who had indicated his interest in purchasing the 5727 Clinton Highway Property for $760,000.00 and that, irrespective of the fact that the 90-day liquidation value reflected in the March 11, 2010 appraisal report of FirstService PGP

---

[6] This is further evidenced through the actions taken by Mr. and Mrs. Epps after learning that the 5727 Clinton Highway Property was to be transferred.  The record reflects that in the final week of December 2010, both they and Mr. Gibson contacted a number of potential purchasers for the property and worked hard towards a sale of the property rather than its transfer through the QuitClaim Deed.

Valuation was $500,000.00, in his opinion, the liquidation value for the 5727 Clinton Highway Property was in excess of the stated consideration in the QuitClaim Deed. *See* TRIAL Ex. 56. Mr. Sexton further testified that because the 5727 Clinton Highway Property was generating a return of approximately 13% based on the stated consideration and the rent received from the U.S. Postal Service, in his opinion, it would not have been necessary to liquidate the property within ninety days. Mr. Sexton has not, however, received a letter of intent or a contract with the prospective buyer, nor has he personally had the property appraised.

Notwithstanding Mr. Sexton's opinion as the court-appointed receiver that it is in the best interests of the Debtor to set aside the Agreed Dismissal Order, the record simply does not support the Movants' arguments that the 5727 Clinton Highway Property was transferred for far less than adequate value and that BSCMS will not be prejudiced. As of November 11, 2009, the Debtor was in default for August 2009, in the amount of $30,734.04, having not received payments between June and October 2009, and payments being two months behind thereafter. COLL. TRIAL Ex. 51; TRIAL Ex. 53. As reflected in the Debtor's bankruptcy schedules, the Debtor owed $379,972.00 to BSCMS at the time the case was filed, COLL. TRIAL Ex. 27, and as of December 30, 2010, the date upon which Mr. Gibson executed the QuitClaim Deed for a consideration of $516,989.15, the principal balance due BSCMS under the Promissory Note was $358,368.37. COLL. TRIAL Ex. 51. This does not, however, as acknowledged by Mr. Sexton, include additional charges such as attorneys' fees or foreclosure costs, which would increase the payoff balance on the loan. Furthermore, the fact that Mr. Sexton has been contacted by a prospective purchaser who indicated an interest in buying the 5727 Clinton Highway Property for $760,000.00 is not sufficient to prove that there is an equity

15

cushion to protect BSCMS's interests.  The record shows that there has been interest in the property

by potential purchasers in the past, including a contract with Florida Postal Investments to purchase

the 5727 Clinton Highway Property for $910,000.00 in October 2010, *see* COLL. TRIAL EX. 48 at

794-801, as well as one or two others in the closing days of December 2010, prior to the

December 31, 2010 deadline imposed by the Agreed Dismissal Order; however, none of those

prospective deals has come to fruition, and nothing in Mr. Sexton's testimony convinced the court

that such a purchase would be imminent.

Similarly, the court does not agree that the Movants can prove that they have a meritorious

claim or that there was excusable neglect by the Debtor or Mr. Tarpy acting on behalf of the Debtor.

In support of their arguments that Mr. Gibson was without authority to file the bankruptcy, to enter

into the Settlement Agreement, and to execute the QuitClaim Deed without the express agreement

of Mr. Epps, the Movants rely on the Debtor's Articles of Organization and Operating Agreement

and the following Tennessee statutory law governing agency of members in member-managed LLCs:

> (a) Unless the articles otherwise provide, if an LLC is member-managed, every member is an agent of the LLC for the purpose of its business, and the act of every member, including the execution in the LLC name of any instrument, for apparently carrying on in the usual way the business of the LLC of which such member is a member, binds the LLC, unless the member so acting has in fact no authority to act for the LLC in the particular matter, and the person with whom the member is dealing has knowledge of the fact that the member has no such authority.
>
> (b) An act of a member which is not apparently for carrying on of the business of the LLC in the usual way does not bind the LLC unless authorized by the other members.
>
> (c) Unless authorized by the other members, no single member or group of members less than all the members shall have authority to:
>
> > (1) Dispose of the goodwill of the business;

16

(2) Do any other act which would make it impossible to carry on the ordinary business of the LLC;

(3) Confess a judgment; or

(4) Submit an LLC claim or liability to arbitration or reference.

(d) No act of a member in contravention of a restriction on such member's authority shall bind the LLC to persons having knowledge of the restriction.

TENN. CODE ANN. § 48-238-103 (2002).  The Movants argue that the Agreed Dismissal Order was, in essence, a consent judgment, prohibited by subsection (c)(3) and that the QuitClaim Deed conveying the 5727 Clinton Highway Property made it impossible for the Debtor to carry out its ordinary business in contravention of subsection (c)(2).

Mr. Gibson did not directly address the Movants' arguments concerning this statute; he did, however, testify that, from its inception, he was designated as managing member and that Mr. Epps was never involved with the Debtor's management, a fact that was confirmed not only by Kelley Hinsley, the attorney who prepared the Debtor's organizational documents, but also by Mr. Epps himself.  When questioned about the intention of the parties when the Debtor was formed, Mr. Hinsley testified that he used form documents to draft the organizational documents denoting that it is member-managed; however, irrespective of the template used, it was his understanding that Mr. Epps was the builder, responsible for the Debtor's construction and maintenance, and that Mr. Gibson was to be managing member, given the functionality of running the Debtor, and was responsible for its daily operations and decision-making just as he had done with the Gibson & Associates and Gary Epps, A Partnership.  Additionally, both Mr. Epps and Mr. Gibson testified that the two of them rarely communicated about the Debtor throughout its nearly fifteen year duration,

17

during which time Mr. Epps took little interest in and did not assist with the daily operations of the

Debtor.  Mr. Epps testified that he had always expected Mr. Gibson to take care of all matters

dealing with the Debtor's management, although he had wanted to be kept apprised, and that

Mr. Gibson had handled all matters prior to the bankruptcy and subsequent events with his consent

and authority.  The record, in fact, establishes that after their relationship soured in 1999 or 2000

over unpaid bills and expenses, Mr. Epps left management and day to day operations of the Debtor

entirely to Mr. Gibson, the managing member who was also designated in the Operating Agreement

as Chief Manager, given the responsibilities to "be the chief executive officer of the Company, and,

as such, . . . be primarily responsible for the general management of the business of the Company

. . . [and] shall sign and deliver in the name of the Company any deeds, mortgages, bonds, contracts

or other instruments pertaining to the business of the Company except as otherwise delegated[.]"

TRIAL EX. 7 at 15 ¶ 10.3(a).

The specific duties of management are further outlined in Tennessee Code Annotated, which

states the following:

(a) **Member-managed LLC.**  In a member-managed LLC:

(1) Each member has equal rights in the management and conduct of the
LLC's business; and

(2) Except as otherwise provided in subsection (e) or (f), any matter relating
to the business of the LLC shall be decided by a majority vote of the
members.
. . . .

(e) **Delegation.**  The LLC documents or the members . . . of an LLC, by a resolution
or other writing, may delegate rights and powers to manage and control the business
and affairs of the LLC to one (1) or more officers, agents or employees, who need not

18

be members of the LLC; provided, that such delegation is reasonable under the circumstances and made in good faith.

. . . .

Tenn. Code Ann. § 48-249-401 (Supp. 2011), and states the following with respect to the agency of members, managers, directors, and officers:

> (a) **Member-managed LLC.** Subject to subsections (d) and (e), in a member-managed LLC:
>
>> (1) Each member is an agent of the LLC for the purpose of its business, and an act of a member, including the signing of an instrument in the LLC's name, that is apparently for carrying on in the ordinary course the LLC's business, or business of the kind carried on by the LLC, binds the LLC, unless the member had no authority to act for the LLC in the particular matter, and the person with whom the member was dealing knew or had notice that the member lacked authority; and
>>
>> (2) An act of a member that is not apparently for carrying on in the ordinary course the LLC's business, or business of the kind carried on by the LLC, binds the LLC only if the act was authorized by the other members.
>
> . . . .
>
> (d) **Authority of officers.** . . . . If, under § 48-249-401(e), any other officer of the LLC is authorized by the LLC documents or by the members . . . of an LLC, by a resolution or other writing, then the authorized officer is an agent of the LLC for the purpose of its business, and an act of the authorized officer, including the signing of an instrument in the LLC's name, that is apparently for carrying on in the ordinary course the LLC's business, or business of the kind carried on by the LLC, binds the LLC.
>
> (e) **Real property authority.** The articles may contain a grant of authority to one (1) or more members . . . to execute instruments for the transfer of real property, and any restrictions and conditions with respect to such authority. In the event the articles name one (1) or more persons who are granted authority to execute instruments for the transfer of real property with any restrictions and conditions with respect to such authority so listed, such grant shall be conclusive in favor of a person who gives value, unless the person knew or had notice that such grant of authority had been rescinded by the LLC. However, such designation, unless it expressly states that it is exclusive, shall not override subsections (a), (b), (c) or (d).

19

(f) **Knowledge; notice.**  For purposes of this section:

(1) A person knows a fact if the person has actual knowledge of it;

(2) A person has notice of a fact, if:

(A) The person knows the fact;

(B) The person has received a notification of the fact;

(C) The person has reason to know the fact exists from all of the facts known to the person at the time in question; or

(D) The fact is contained in the articles of organization;

(3) A person notifies or gives a notification of a fact to another, by taking steps reasonably required to inform the other person in ordinary course, whether or not the other person knows the fact;

(4) A person receives a notification of a fact when the notification:

(A) Comes to the person's attention; or

(B) Is duly delivered at the person's place of business, or at any other place held out by the person as a place for receiving communications; and

(5) An entity knows, has notice, or receives a notification of a fact for purposes of a particular transaction, when the individual conducting the transaction for the entity knows, has notice or receives a notification of the fact, or, in any event, when the fact would have been brought to the individual's attention had the entity exercised reasonable diligence. An entity exercises reasonable diligence if it maintains reasonable routines for communicating significant information to the individual conducting the transaction for the entity, and there is reasonable compliance with the routines. Reasonable diligence does not require an individual acting for the entity to communicate information unless the communication is part of the individual's regular duties, or the individual has reason to know of the transaction and that the transaction would be materially affected by the information.

Tenn. Code Ann. § 48-249-402 (Supp. 2011).

Even though the bankruptcy case was filed in contravention of the Articles of Organization and without Mr. Epps's knowledge, the same Articles of Organization requiring the unanimous consent of the members also designates Mr. Gibson as managing member which, as confirmed by Mr. Hinsley and authorized by Tennessee Code Annotated, conferred upon him the responsibilities of managing and operating the Debtor, powers which were consented to without objection for more than a decade by Mr. Epps.  In fact, at trial, Mr. Hinsley testified that when Mr. Gibson came to see him prior to the December 31, 2010 deadline imposed by the Agreed Dismissal Order and inquired whether he had the authority to sign the QuitClaim Deed, after reviewing his file from the Debtor's formation in 1997, discussing with Mr. Gibson whether anything had changed with respect to the status and structure of the Debtor, and reviewing the Agreed Dismissal Order, Mr. Hinsley advised Mr. Gibson that not only was he authorized to execute the QuitClaim Deed but he was required to execute it.  Additionally, the Articles of Organization authorize both parties to execute instruments for the transfer of real property but do not expressly void or otherwise nullify any action taken outside their scope, nor is there any statutory basis to do so.  *See* TRIAL EX. 6 at ¶¶ 6, 10(a), 14.[7]

With respect to excusable neglect by the attorneys, the Movants do not dispute that Mr. Tarpy had no knowledge that Mr. Epps had not authorized the bankruptcy filing.  At trial, Mr. Tarpy

---

[7] In their post-trial briefs, both Mr. Gibson and BSCMS refer to the requirement in Article VI of the Operating Agreement that each member make contributions for the ongoing expenses of the Debtor, arguing that Mr. Epps did not make contributions as needed and his default under Section 6.4 vested Mr. Gibson with the full authority to act on behalf of the Debtor.  Both arguments, however, fail to take into account the requirement of Section 6.4(b) that any default upon a call for funds described in Section 6.4(a) required a notice to Mr. Epps from the Debtor that he was in default and a thirty-day opportunity to cure the default.  There is nothing in the record to indicate that any such notice was provided to Mr. Epps, and, in fact, taking into account the general lack of open communication evidenced during the testimony of both Mr. Gibson and Mr. Epps, the court questions whether Mr. Gibson ever made a formal call for funds to Mr. Epps as set forth in Section 6.4(a), thus, in the court's opinion, nullifying any remedy set forth in the remainder of Section 6.4, including subsection (c) disqualifying defaulting members from having the authority to act on behalf of the company and vesting all management powers in the non-defaulting members.  *See generally* TRIAL EX. 7 at 8-9 ¶¶ 6.4(a)-(c).

testified that he was first contacted by Mr. Gibson on June 28, 2010, with whom he dealt exclusively, and that he never communicated with Mr. Epps.  He also testified that when he inquired as to whether Mr. Gibson's partner knew about the bankruptcy filing, Mr. Gibson expressly told him that Mr. Epps did know and it was not until the last week of December 2010, when he learned otherwise. Mr. Tarpy also testified that there was a great deal of information passing between himself and Mr. Gibson, that the statements and schedules were prepared on an expedited basis from the information he received from Mr. Gibson, that he did not ask to see the Debtor's organizational documents prior to the bankruptcy filing, and that he did not receive the email marked as Trial Exhibit 23 from Mr. Gibson with home addresses for both Mr. Epps and Mr. Gibson.  Nevertheless, Mr. Tarpy was not required to review the Debtor's organizational documents, and he reasonably relied on Mr. Gibson's statements that Mr. Epps knew of the bankruptcy filing.  All of his dealings were exclusively with Mr. Gibson, who was the Debtor's managing member, a fact which was reflected in the organizational documents and would have been confirmed by Mr. Tarpy had he requested them.  Furthermore, his own lack of knowledge concerning what Mr. Epps knew notwithstanding, Mr. Tarpy testified that based upon the information he received from Mr. Gibson, it was, in his professional opinion, in the Debtor's best interests to file the bankruptcy case in order to stop the foreclosure and preserve the equity in the 5727 Clinton Highway Property, and it was, subsequently, in the Debtor's best interest to enter into the Settlement Agreement with BSCMS. Any actions taken by Mr. Tarpy on behalf of the Debtor were based upon his professional judgment and were within the scope of his authority as attorney for the Debtor.  Furthermore, as managing member, Mr. Gibson was statutorily authorized to rely on Mr. Tarpy's legal advice in all aspects of the bankruptcy case, including the Settlement Agreement and resulting QuitClaim Deed, just as he

22

was authorized to rely as the advice of Mr. Hinsley concerning his authority and obligation to

execute the QuitClaim Deed, even without consulting first with Mr. Epps.  *See* TENN. CODE ANN.

§ 48-249-403(k).  Accordingly, because the Movants have failed to show that BSCMS will not be

prejudiced or that they have a meritorious claim, none of the foregoing actions constitutes excusable

neglect, and the court finds that the Movants are not entitled to relief from the Agreed Dismissal

Order under Rule 60(b)(1).

**B**

Courts may also grant relief from a judgment for "newly discovered evidence that, with

reasonable diligence, could not have been discovered in time to move for a new trial under

Rule 59(b)[.]" FED. R. BANKR. P. 60(b)(2).  "In order to prevail on a Rule 60(b)(2) motion, a movant

must demonstrate (1) that it exercised due diligence in obtaining the information and (2) [that] the

evidence is material and controlling and clearly would have produced a different result if presented

before the original judgment.  In other words, the evidence cannot be merely impeaching or

cumulative." *Good v. Ohio Edison Co.,* 149 F.3d 413, 423 (6th Cir. 1998) (internal citations and

quotation marks omitted).  Moreover, "the newly discovered evidence must relate to facts existing

at the time of trial." *Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc.*, 358 Fed. Appx. 643, 653

(6th Cir. 2009) (citing *Davis v. Jellico Cmty. Hosp., Inc.*, 912 F.2d 129, 136 (6th Cir. 1990)).  In their

post-trial brief, the Movants argue that Mr. Epps, "and therefore the Debtor," finding out about the

bankruptcy filing, the default with BSCMS, the Settlement Agreement, and the QuitClaim Deed after

the fact falls within this subsection as newly discovered evidence.[8]  POST-TR. BR. at 14.  They additionally argue that Mr. Epps exercised due diligence, but his "lack of discovery was due to the active concealment of the information concerning the bankruptcy by Mr. Gibson" including his representations to Mr. Tarpy that he was authorized to file the bankruptcy case and his inclusion of incorrect addresses for Mr. Epps within the statements and schedules.  POST-TR. BR. at 14.

As discussed, there is no dispute that Mr. Epps was not aware of the foregoing events prior to late December 2010, and based upon his testimony, had he known, he would not have agreed to the bankruptcy filing, entering into the Settlement Agreement, or executing the QuitClaim Deed.  However, his lack of knowledge is, in part, due to his own express consent and implied acquiescence for more than a decade, during which Mr. Gibson was solely responsible for the Debtor's management and operations without any input or assistance from Mr. Epps.  At trial, Mr. Gibson testified that he contacted Mr. Epps a couple of times prior to their meeting in December 2010, and each time, Mr. Epps said he was busy and would call him back but did not return the calls.  There is some discrepancy in the testimony of Mr. Gibson and Mr. Epps as to whether Mr. Gibson ever mentioned that he needed to talk to Mr. Epps concerning the 5727 Clinton Highway Property before their meeting; nevertheless, the record also reflects that Mr. Epps was not receptive to speaking with Mr. Gibson and put him off prior to finally meeting with him on December 23, 2010.  While the court does not believe that Mr. Gibson was forthcoming with Mr. Epps with respect to the Debtor,

---

[8] Mr. Epps also argues that the events leading up to the bankruptcy filing were unknown to him, and along those lines, there was testimony from Mr. Gibson concerning how the BSCMS loan went into default with payments coming to a post office box rather than going directly to the lender, two payments not having been received and/or paid, and Mr. Gibson's co-mingling of these funds with those for Gibson Properties, Inc., a corporation owned by Mr. Gibson. These issues, however, are outside the scope of the Movants' Motion for Relief from Judgment and, as such, are not material to the court's analysis under the subsections of Rule 60(b) or Rule 60(d).

both men testified that their relationship was strained at best and there had been little communication between them for a number of years.  Additionally, as both Mr. and Mrs. Epps testified, Mr. Epps is a builder and contractor, he does not have or utilize email, and his wife is the primary manager of his business affairs.  Although the court agrees, unquestionably, that Mr. Gibson should have disclosed all pertinent business information to Mr. Epps in a more timely manner, the inescapable reality is, based upon the conduct of the parties since 1997, for all intents and purposes, Mr. Gibson was the Debtor in its business operations, and as such, the Debtor was fully aware of the circumstances and events in question, therefore the Movants' arguments under subsection (b)(2) fail.

## C

Subsection (3) addresses setting aside a final judgment based upon an opposing party's fraud, misrepresentation, or misconduct.

> Fraud is the knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment.  Fraud thus includes deliberate omissions when a response is required by law or when the non-moving party has volunteered information that would be misleading without the omitted material.  Accordingly, to establish grounds for relief under Rule 60(b)(3), the moving party need not demonstrate that the adverse party has committed all the elements of fraud specified in the law of the state where the federal court is sitting, but rather must simply show that the adverse party's conduct was fraudulent under this general common law understanding.

*Info-Hold*, 538 F.3d at 456 (internal citations and quotation marks omitted).  "Fraud cannot be unintentional, and the use of the prefix 'mis-' in both 'misrepresentation' and 'misconduct' also suggests that the moving party under the rule must show that the adverse party committed a deliberate act that adversely impacted the fairness of the relevant legal proceeding [in] question."

*Stooksbury v. Ross*, 2012 WL 523668, at *7, 2012 U.S. Dist. LEXIS 19673, at *21 (E.D. Tenn.

25

Feb. 16, 2012) (citing *Jordan v. Paccar, Inc.*, 97 F.3d 1452 (Table), 1996 WL 528950, at *6, 1996

U.S. App. LEXIS 25358, at *17 (6th Cir. Sept. 17, 1996)).

> "Misrepresentation" can be interpreted as an affirmative misstatement. "Fraud" can
> be interpreted as reaching deliberate omissions when a response is required by law
> or when the non-moving party has volunteered information that would be misleading
> without the omitted material. And "other misconduct" can be interpreted to reach
> questionable behavior affecting the fairness of litigation other than statements or the
> failure to make statements.

*Jordan*, 97 F.3d at 1452, 1996 WL 528950, at *6 (citations omitted).

To satisfy this subsection, the Movants must establish that Mr. Gibson and/or BSCMS

"engaged in fraud or other misconduct," and that misconduct prevented the Movants "from fully and

fairly litigating [their] case." *RDI of Mich., LLC v. Mich. Coin-Op Vending, Inc.*, 2011 WL

3862347, at *6, 2011 U.S. Dist. LEXIS 98426, at *15-16 (E.D. Mich. Sept. 1, 2011). However, even

if the Movants prove by clear and convincing evidence that Mr. Gibson and/or BSCMS acted

deliberately or recklessly, Mr. Gibson and/or BSCMS may rebut the presumption of prejudice

accompanying Rule 60(b)(3) by demonstrating through clear and convincing evidence that the

misconduct had no prejudicial effect on the Movants. *Lyon v. Baker (In re ClassicStar, LLC)*, 2011

WL 2470500, at *7, 2011 Bankr. LEXIS 2374, at *22 (Bankr. E.D. Ky. June 18, 2011).

As they relate to subsection (3), the Movants' arguments focus on the conduct of Mr. Gibson

which he acknowledges – his failure to inform Mr. Epps of the default to BSCMS, the two

bankruptcy filings, the Settlement Agreement with BSCMS, and the QuitClaim Deed, as well as his

representations to Mr. Tarpy that Mr. Epps knew of the bankruptcy filing when, in fact, he did not –

in addition to their allegations that Mr. Gibson intentionally provided Mr. Tarpy with false addresses

26

for Mr. Epps so that he would not receive notice of the bankruptcy filing. As has been discussed in detail and conceded by Mr. Gibson, he did not discuss with nor did he obtain authorization from Mr. Epps before the Debtor filed this bankruptcy case, entered into the Settlement Agreement with BSCMS, or executed the QuitClaim Deed. Mr. Gibson's failure to disclose, however, does not automatically equate to misrepresentation, fraud, or misconduct such that the Agreed Dismissal Order should be set aside; Mr. Gibson must also have possessed a duty to disclose to and obtain authorization from Mr. Epps.

Although they do not specify actions such as the Settlement Agreement or the QuitClaim Deed, paragraph 14 of the Debtor's Articles of Organization required both Mr. Gibson and Mr. Epps to agree before filing any insolvency action, including a bankruptcy petition, thus setting forth a duty between them with respect to the filing of the case. The Movants do not, understandably, seek to set aside the bankruptcy filing itself nor are they seeking to set aside the Agreed Dismissal Order as it relates to the dismissal of the case, but only as it relates to the QuitClaim Deed. As such, the Debtor's organizational documents, with the exception of paragraph 14 of the Articles of Organization, do not provide a basis for fraud under Rule 60(b)(3) as the Movants seek to invoke it. The Articles of Organization do not impose any affirmative duty of disclosure upon Mr. Gibson; in fact, as previously discussed, they infer upon him a duty to manage and operate Gibson and Epps, L.L.C., but there is no mention of other affirmative duties owed by either Mr. Gibson or Mr. Epps to the other under that document. *See* TRIAL EX. 6. Pursuant to the Debtor's Operating Agreement, Mr. Gibson, as managing member and chief manager, possessed the following duties and powers:

> **Chief Manager**. The Chief Manager shall be the chief executive officer of the Company, and, as such, shall be primarily responsible for the general management

27

of the business of the Company and for implementing the policies and directives of the Members.  The Chief Manager shall have authority to make contracts on behalf of the Company in the ordinary course of the Company's business, shall be responsible to effect all orders and resolutions of the Members, shall sign and deliver in the name of the Company any deeds, mortgages, bonds, contracts or other instruments pertaining to the business of the Company except as otherwise delegated or provided by law, and shall perform such other duties as from time to time may be assigned by the Members.

. . . .

**Standard of Conduct**.  A Manager shall discharge the duties of an office in good faith, in a manner the Manager reasonably believes to be in the best interest of the Company and with the care an ordinarily prudent person in a like position would exercise under similar circumstances.  In discharging his duties, a Manager is entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, if prepared or presented by one (1) or more Managers or employees of the Company whom the Manager reasonably believes to be reliable and competent in the matters presented; or legal counsel, public accountants, or other persons as to matters the Manager reasonably believes are within the person's professional or expert competence.  A Manager is not acting in good faith who has knowledge concerning the matter in question that makes reliance otherwise permitted by this provision unwarranted.  A Manager shall not be liable for any action taken as a Manager, or any failure to take any action, if the Manager has performed the duties of the office in compliance with this provision.

Trial Ex. 7 at ¶¶ 10.3(a), 10.4.  The duties outlined in the Articles of Organization and the

Operating Agreement are also encompassed by and in addition to the following statutory standards

of conduct owed in limited liability companies:

(a) **Member-managed LLC.**  The only fiduciary duties a member owes to a member-managed LLC and the LLC's other members and holders are the duty of loyalty and the duty of care imposed by subsections (b) and (c).  A holder of financial rights owes no duties to the LLC, or to the other members or holders, solely by reason of being a holder of financial rights.

(b) **Duty of loyalty.**  A member's duty of loyalty to a member-managed LLC and the LLC's other members and holders of financial rights is limited to the following:

(1) To account to the LLC and to hold as trustee for it any property, profit or benefit derived by the member in the conduct or winding up of the LLC's

28

business, or derived from a use by the member of the LLC's property, including the appropriation of any opportunity of the LLC;

(2) Subject to § 48-249-404, to refrain from dealing with the LLC in the conduct or winding up of the LLC's business as, or on behalf of, a person having an interest adverse to the LLC; and

(3) To refrain from competing with the LLC in the conduct of the LLC's business before the termination of the LLC.

(c) **Duty of care.**  A member's duty of care to a member-managed LLC, and the LLC's other members and holders of financial rights in the conduct of and winding up of the LLC's business, is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct or a knowing violation of law.

(d) **Good faith and fair dealing.**  A member shall discharge the member's duties to a member-managed LLC and its other members and holders of financial rights under this chapter or under the LLC documents, and shall exercise any rights with respect to the LLC consistently with the obligation of good faith and fair dealing.

(e) **Furtherance of member's own interest.**  A member of a member-managed LLC does not violate a duty or obligation under this chapter or under the LLC documents, merely because the member's conduct also furthers the member's own interest.

(f) **Dealings with LLC.**  A member of a member-managed LLC may lend money to and transact other business with the LLC.  As to each loan or transaction, the rights and obligations of the member are the same as those of a person who is not a member, subject to other applicable law.

(g) **Representative of surviving member.**  This section applies to a person winding up the LLC's business as the personal representative of the last surviving member, as if the person were a member.

. . . .

(j) **Officers.** An officer of an LLC shall discharge all duties as an officer:

(1) In good faith;

(2) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

(3) In a manner the officer reasonably believes to be in the best interests of the LLC.

(k) **Reliance on others.**  In discharging the duties described in this section, a member . . . is entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, if prepared or presented by:

. . . .

(2) Legal counsel, public accountants or other persons as to matters the member, manager, director or officer reasonably believes are within the person's professional or expert competence[.]

. . . .

(l) **Unwarranted reliance.**  A member . . . is not acting in good faith, if the member . . . has knowledge concerning the matter in question that makes reliance otherwise permitted by subsection (k) unwarranted.

(m) **Limitation on liability.**  A member . . . is not liable for any action taken as a member, . . . or any failure to take any action, if the member . . . performs its duties in compliance with this section.

(n) **Effect of delegation.**  Any officer, agent or employee who exercises some or all of the rights of a member . . ., pursuant to a delegation of rights and power under § 48-249-401(e) is held to the same standards of conduct set forth in this section, for members . . . to the extent that such officer, agent or employee exercises the delegated rights and powers.  A member . . . is relieved of liability imposed by law for the standards prescribed in this section to the extent that such person's managerial authority is vested in an officer, agent or employee, pursuant to a delegation of rights and power under § 48-249-401(e).

Tenn. Code Ann. § 48-249-403 (Supp. 2011).

As with the Articles of Organization, the duties defined under the Operating Agreement do not expressly include a duty of the managing member to disclose and/or obtain approval for his business decisions.  To the contrary, the organizational documents appear to do the opposite and give Mr. Gibson, in his capacity as managing member, the ability to make those decisions without

consultation, so long as they are made in good faith and he is acting in what he believes to be the Debtor's best interests. Similarly, the standard of care outlined in Tennessee Code Annotated § 48-249-403 does not expressly require full disclosure or approval of business decisions prior to being made. On the other hand, both the Operating Agreement and § 48-249-403 require good faith and fair dealing by a managing member to the other members, and it can easily be concluded that, although he may have used his best business judgment, the failure to disclose entering into a settlement through an unauthorized bankruptcy filing wherein the company's only asset was to be transferred prior to doing so or immediately thereafter did not amount to good faith and fair dealing on Mr. Gibson's part.

Also relevant to this subsection is the fact that Mr. Gibson did not provide Mr. Epps's correct address information to Mr. Tarpy in preparation of the bankruptcy case and further perpetuated Mr. Epps's lack of knowledge. The bankruptcy statements and schedules contain two addresses for Mr. Epps, neither of which, he testified, belongs or has ever belonged to him. The first, 2258 Cambridge Drive, Morristown, TN 37814, is shown in the List of Equity Security Holders and the creditor matrix, and the second, P.O. Box 1771, Morristown, TN 37816, is also listed in the creditor matrix not only for Mr. Epps, but also for Mr. Gibson and the Debtor itself, and is the mailing address for the Debtor listed on the Voluntary Petition. At trial, Mr. Epps testified that he receives all mail at his post office box in Talbott, Tennessee, an address that Mr. Gibson possessed and had used in the past to send Mr. Epps mail. He confirmed his street address on Fox Trott Lane in Morristown; however, he does not have a mailbox and has never received mail at his physical address. Mr. Epps also testified that he has never lived or received mail at 2258 Cambridge Drive,

31

which is the address for Windrich Pointe condominiums, a condominium complex once managed by Mr. Gibson.

When questioned about the addresses listed – and verified under penalty of perjury – Mr. Gibson testified that he did not purposely attempt to hide Mr. Epps's address from Mr. Tarpy or not provide it in the bankruptcy statements and schedules. He testified that the post office box has, since its inception, been the mailing address for the Debtor as well as the mailing address for the prior partnership between himself and Mr. Epps. Mr. Gibson supplied that address to Mr. Tarpy via an email on June 28, 2010, at 10:25 p.m., stating that "[t]he office mailing address for both members (each owns 50%) is P.O. Box 1771 - Morristown, TN 37816." TRIAL EX. 21. Mr. Gibson also testified that he sent Mr. Tarpy a second email at 10:34 p.m., approximately nine minutes later, which states the following:

> Sorry, I failed to include the address for Gary Epps in the previous email as you requested. His address is 790 Fox Trott Lane - Morristown, TN 37814.[9]

> Also, I do not get mail at my residence. If you need a street address for me, use 2258 Cambridge Drive - Morristown, TN 37814.

Trial Ex. 23. Mr. Tarpy, however, testified that he did not receive the second email, and Mr. Gibson testified that he provided the copy entered into evidence from his office computer. Additionally, with respect to the Cambridge Drive address being listed for Mr. Epps personally, Mr. Gibson testified that he did not provide that address to Mr. Tarpy, but that he might have taken it off of the Debtor's tax returns, although Mr. Tarpy testified that the addresses for both members and all other information he used to prepare the Debtor's statements and schedules came directly from Mr. Gibson

---

[9] This is the address for Mr. Epps set forth in Article 2 of the Articles of Organization of Gibson and Epps, L.L.C. TRIAL EX. 6.

or the statements and schedules for the previously filed bankruptcy case.  Finally, in response to questions at trial concerning why he executed the documents containing incorrect information, Mr. Gibson testified that they were blank when he signed them; however, this testimony was refuted by Mr. Tarpy, who testified that the statements and schedules were completed when Mr. Gibson signed them, and by Mr. Overbay, an associate with Mr. Tarpy's law firm, who testified that it is not only his firm's policy never to generate documents after they have been executed, but that the software program used to prepare statements and schedules makes it impossible to fill in a document after it has been signed.

Based upon the record, the court finds that Mr. Gibson, in willful disregard of paragraph 14 of the Articles of Organization of Gibson and Epps, L.L.C. requiring the unanimous consent of Mr. Gibson and Mr. Epps, expressly and intentionally misrepresented to Mr. Tarpy that Mr. Epps had knowledge of, and presumably had consented to, the bankruptcy filing.  The court also finds that, in order to further his misrepresentations, Mr. Gibson intentionally provided Mr. Tarpy with incorrect address information for Mr. Epps by providing an address for Gibson and Epps, L.L.C. to which he knew Mr. Epps had no access, or, at the very least, acted with reckless disregard by not ensuring that he had provided – and Mr. Tarpy had received – the correct address information, as evidenced by his execution of, under penalty of perjury, the List of Equity Holders as well as the Verification of Creditor Matrix containing incorrect address information for Mr. Epps.  Moreover, there is no indication that Mr. Gibson ever provided Mr. Tarpy with Mr. Epps's post office box, to which Mr. Epps testified that he had previously received mail from Mr. Gibson.  Under either scenario, through these misrepresentations, Mr. Gibson adversely thwarted any ability of Mr. Epps

33

to participate in the bankruptcy case, including but not limited to the Settlement Agreement with

BSCMS and the QuitClaim Deed, thus supporting the Movants' arguments that they are entitled to

relief from the Agreed Dismissal Order under Rule 60(b)(3).

## D

The Movants also argue in their post-trial brief that the Agreed Dismissal Order should be

set aside as having perpetrated a fraud on the court, which is governed by Rule 60(d)(3) stating that

Rule 60 "does not limit a court's power to:  . . . set aside a judgment for fraud on the court." FED.

R. CIV. P. 60(b)(3).  Nevertheless, based upon the record, fraud on the court is not implicated.  Sixth

Circuit authority defines "fraud on the court" as conduct:  "(1) [o]n the part of an officer of the court;

(2) [t]hat is directed to the 'judicial machinery' itself; (3) [t]hat is intentionally false, willfully blind

to the truth, or is in reckless disregard for the truth; (4) [t]hat is a positive averment or is concealment

when one is under a duty to disclose; (5) [t]hat deceives the court." *Workman v. Bell*, 245 F.3d 849,

852 (6th Cir. 2001) (citations omitted); *see also LaVenture v. Haeberlin*, 2009 WL 2762267, at *1,

2009 U.S. Dist. LEXIS 76888, at *4 (W.D. Ky. Aug. 27, 2009) ("Fraud on the court (other than fraud

as to jurisdiction) is fraud which is directed to the judicial machinery itself and *is not fraud between

the parties or fraudulent documents, false statements or perjury*.") (citations omitted) (emphasis in

original).  In this case, however, there are no allegations and, more importantly, no proof of false or

reckless disregard on the part of *an officer of the court* to justify setting aside the Agreed Dismissal

Order under Rule 60(d)(3).  As previously discussed, it was reasonable for Mr. Tarpy to accept

Mr. Gibson's representations, and all actions he took on behalf of the Debtor were, in exercising his

legal judgment, in the Debtor's best interests and in no way intentional or deceptive.

34

**E**

Under Rule 60(b)(4), a judgment is subject to being set aside if it is determined to be void.

Because Rule 60(b)(4) embodies an important distinction between a void judgment and an erroneous one, *Chambers v. Armontrout*, 16 F.3d 257, 260 (8th Cir. 1994) ("[A] judgment is not void merely because it is erroneous.") (quotation omitted), a reviewing court only examines whether the judgment reconsidered is void.

> A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect. In the interest of finality, the concept of void judgments is narrowly construed. While absence of subject matter jurisdiction may make a judgment void, such total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction. A court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void. Only in the rare instance of a clear usurpation of power will a judgment be rendered void.

*Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir. 1972) (footnotes omitted). For purposes of Rule 60(b)(4), a judgment is void if a court entered an order outside its legal powers. *Carter [v. Fenner]*, 136 F.3d [1000], 1005 [(5th Cir. 1998)] (citation omitted). . . . . This distinction between void and erroneous judgments serves to prevent the use of the Rule as a substitute for an appeal. *Hopper [v. Euclid Manor Nursing Home, Inc.]*, 867 F.2d [291,] 294 [(6th Cir. 1989)] ("The parties may not use a Rule 60(b) motion as a substitute for an appeal."). "[I]f a party fails to appeal an adverse judgment and then files a Rule 60(b)(4) motion after the time permitted for an ordinary appeal has expired, the motion will not succeed merely because the same argument would have succeeded on appeal." *Kocher v. Dow Chem. Co.*, 132 F.3d 1225, 1229 (8th Cir. 1997) (citation omitted).

*Jalapeno Prop. Mgmt., LLC v. Dukas*, 265 F.3d 506, 515-516 (6th Cir. 2001).

Once again, the Movants argue that because Mr. Epps was not notified about the bankruptcy filing, the Settlement Agreement, or the QuitClaim Deed, the Debtor was likewise not notified, thus the Agreed Dismissal Order is a void judgment subject to being set aside. There is, however, nothing

35

in the record to indicate that the foregoing actions or events are void or voidable because they were done without Mr. Epps's express authorization, and any issues concerning the duty of care Mr. Gibson and Mr. Epps owed to one another pursuant to Tennessee Code Annotated §§ 48-249-402 and -403 are outside the scope of this contested matter. As previously discussed, Mr. Gibson was the managing member and had, since 1997, performed all management and operational duties for the Debtor. Because Mr. Gibson knew, the Debtor also had knowledge and due process, the court was within its authority to enter the Agreed Dismissal Order, and the Agreed Dismissal Order is not void. Therefore, there is no basis for setting it aside under Rule 60(b)(4).

## F

Finally, Rule 60(b)(6) applies "only in exceptional or extraordinary circumstances which are not addressed in the first five numbered clauses of the Rule" since "almost every conceivable ground for relief is covered under the other subsections of Rule 60(b)." *In re Reiman*, 431 B.R. 901, 910 (Bankr. E.D. Mich. 2010) (quoting *Hopper*, 867 F.2d at 294 and *Rogan v. Countrywide Home Loans, Inc. (In re Brown)*, 413 B.R. 700, 705 (B.A.P. 6th Cir. 2009)). "Consequently, courts must apply Rule 60(b)(6) relief only in 'unusual and extreme situations where principles of equity *mandate* relief.'" *Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (emphasis in original) (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)). However, because the subsections of Rule 60(b) are "mutually exclusive," *Pioneer*, 113 S. Ct. at 1497, subsection (6) "can be used only as a residual clause in cases which are not covered under the first five subsections of Rule 60(b)." *Pierce v. United Mine Workers of Am. Welfare & Ret. Fund for 1950 and 1974*, 770 F.2d 449, 451 (6th Cir. 1985). Rule 60(b)(6) "does not

particularize the factors that justify relief . . . [but] provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.'" *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64, 108 S. Ct. 2194, 2204, 100 L.Ed.2d 855 (1988) (citations omitted).

The court finds that subsection (6) does not apply because the Movants' arguments fell within the scope of four other subsections to Rule 60(b), and there is, therefore, no basis for application of this "extraordinary" remedy. *See, e.g., Olle*, 910 F.2d at 365 (holding that courts "must apply subsection (b)(6) only 'as a means to achieve substantial justice when "something more" than one of the grounds contained in Rule 60(b)'s first five clauses is present.'") (quoting *Hopper*, 867 F.2d at 294); *Smith v. Sec'y of Health & Human Servs.*, 776 F.2d 1330, 1333 (6th Cir. 1985) (stating that subsection (6) must be based on reasons other than and should only be utilized when the other subsections do not apply).

### III

Although the Movants have satisfied the specific factors necessary to grant relief under subsection (b)(3), all motions for Rule 60(b) relief must also have been filed within a reasonable time as required by Rule 60(c)(1). In its post-trial brief, BSCMS argues that notwithstanding that the Motion for Relief from Judgment was filed within a year after entry of the Agreed Dismissal Order, it was not filed within a reasonable time. "The reasonable time standard has been interpreted to depend on the factual circumstances of each case." *Smith*, 776 F.2d at 1333. What constitutes reasonable time depends "upon the facts in a case, including length and circumstances of delay in

filing, prejudice to opposing party by reason of the delay, and circumstances warranting equitable relief." *Eglinton v. Loyer (In re G.A.D., Inc.)*, 340 F.3d 331, 334 (6ᵗʰ Cir. 2003). "The one year time limit is in addition to, not in lieu of, the requirement that the Motion be filed within a reasonable time." *Huebner v. Tangwall*, 2007 WL 2725244, at *1, 2007 U.S. Dist. LEXIS 68756, at *3 (M.D. Tenn. Sept. 17, 2007) (citing Moore's Federal Practice 3d § 60.65[2][b], p. 60-202.2). "If 'a reasonable time' happens to be less than a year in a given case, then a party must file the motion by that earlier date." *Massi v. Walgreen Co.*, 337 Fed. Appx. 542, 545 (6ᵗʰ Cir. 2009).

The record establishes that on December 23, 2010, Mr. Gibson told Mr. Epps that the loan secured by the 5727 Clinton Highway Property was in default, that the property would be "lost" if it was not sold, but that he also had a contract for its sale. On that date, however, Mr. Gibson did not advise Mr. Epps that Gibson and Epps, L.L.C. had filed for bankruptcy, that the case had been dismissed through the Agreed Dismissal Order, or that under the terms of the Agreed Dismissal Order, Mr. Gibson was required to execute a deed in lieu of foreclosure. Following the Christmas holiday, from December 27 through December 31, 2010, Mr. and Mrs. Epps took action to find out as much information as they could by calling, among others, the U.S. Postal Service office, BSCMS, Mr. Tarpy, Mr. Overbay, and attorneys with the firm of Stites & Harbison, and it was through these phone calls that Mr. Epps learned the extent of the events leading up to and including the bankruptcy filing, the settlement with BSCMS, and that the QuitClaim Deed would be tendered to and recorded by BSCMS if the 5727 Clinton Highway Property was not sold by December 31, 2010. In addition, based on each individual's testimony, the record reflects that Mr. and Mrs. Epps, Mr. Gibson, and Mr. Hinsley contacted and communicated with a number of prospective purchasers for the property

38

in their attempts to satisfy the Settlement Agreement without having to tender the QuitClaim Deed when it became clear that the contract with Florida Postal Investments was not going to close.  Those attempts failed, however, and Mr. Gibson executed and tendered the QuitClaim Deed as he was required to do under the Settlement Agreement, which was recorded by BSCMS on January 12, 2011.  JT. STIPS. at ¶¶ 25-28.

Following the transfer of the 5727 Clinton Highway Property to BSCMS, Mr. Epps did not seek relief from the Agreed Dismissal Order in the bankruptcy court; instead, on February 16, 2011, he filed the State Court Lawsuit in the Hamblen County Circuit Court, alleging, among other things, fraud, breach of duty to maintain records and to make the regular monthly payments on the 5727 Clinton Highway Property, filing the bankruptcy case in violation of the Articles of Organization, providing false information to the Debtor's bankruptcy attorneys, and unjustly enriching BSCMS by providing it with a remedy – a deed in lieu of foreclosure – that it did not specifically request through a court proceeding.  TRIAL EX. 17; JT. STIPS. at ¶ 29.  The Complaint also sought the appointment of a receiver, an accounting, an attachment on Mr. Gibson's membership interests, injunctive relief against Mr. Gibson from transferring any assets not in the ordinary course of business, a judgment declaring the QuitClaim Deed void and setting it aside, imposition of a constructive trust or equitable lien against the 5727 Clinton Highway Property, compensatory damages in the amount of $750,000.00, and punitive damages in the amount of $500,000.00.  TRIAL EX. 17; JT. STIPS. at ¶ 29.  Settlement negotiations ensued between February and August 2011, when, on August 5, 2011, BSCMS filed a motion to dismiss the State Court Lawsuit, asserting that the Hamblen County Circuit Court lacked jurisdiction to vacate the Agreed

39

Dismissal Order.  Jt. Stips. at ¶¶ 30-31.  The Movants then filed the Motion for Relief from Judgment on October 3, 2011.

Although Mr. Epps did not specify why he first sought relief from the Hamblen County Circuit Court rather than the bankruptcy court, the Motion for Relief from Judgment was filed within in the one year time frame set forth in Rule 60(c)(1) and, based upon the record, was filed within a reasonable time. It is undisputed that the Agreed Dismissal Order, having been entered on November 4, 2010, was final when Mr. Epps learned of its existence and the agreements it memorialized, and he could have filed a Rule 60(b) motion with the bankruptcy court after learning about the Agreed Dismissal Order, just as he could have done on February 16, 2011, when he filed the State Court Lawsuit or at any time during the settlement discussions with BSCMS or even immediately after BSCMS filed its motion to dismiss the State Court Lawsuit.  His delay, however, in filing the motion in the bankruptcy court is not unreasonable.  The parties have stipulated that they "mediated and otherwise engaged in settlement discussions regarding the subject property" from February 2011 until August 2011, when BSCMS filed a motion to dismiss in the State Court Lawsuit and raised the issue of subject matter jurisdiction.  Jt. Stips. at ¶ 30.  It is not unreasonable that the Movants would not, during those negotiations, go to the added expense and potentially unnecessary process of filing a Rule 60(b) motion in the bankruptcy court.

Although the court agrees that setting aside the Agreed Dismissal Order sixteen months after it was entered could be prejudicial to BSCMS, who has now been in possession of the 5727 Clinton Highway Property for approximately fourteen months, the court finds that any prejudice is heavily outweighed by the fraud perpetrated by Mr. Gibson and against Mr. Epps and the Debtor in

connection with these events.  In addition, BSCMS is still entitled to the balance of the loan securing

the property, and if the accelerated balance to which it is entitled is not paid, BSCMS will still be

entitled to foreclose.  On the other hand, setting aside the Agreed Dismissal Order as it pertains to

the QuitClaim Deed could provide Mr. Epps with opportunities he was previously denied – to pay

off the loan, to purchase the property at foreclosure, or to find a purchaser such that a foreclosure sale

would yield a potential profit above the amount due to BSCMS.

In summary, the Movants have proved by clear and convincing evidence facts entitling them

to relief from the Agreed Dismissal Order pursuant to Rule 60(b)(3).  The Motion for Relief from

Judgment shall be granted, and Gibson and Epps, L.L.C. shall be relieved of the obligations imposed

upon it under paragraphs 3 through 8 of the Agreed Order Dismissing Case entered on November 4,

2010.

An Order consistent with this Memorandum will be entered.

FILED:  March 21, 2012

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE

41